---
Potter *v.* Tallman.
---

• • •

## POTTER *vs.* TALLMAN and others.

Where money was loaned by a citizen of this state, to a firm doing business at Davenport, Iowa, and the money was remitted to them at that place, and a certificate of deposit taken, dated at Davenport, by which the borrowers acknowledged the receipt of the money, and promised to pay the same, to the order of the lender, one year from date, on the return of the certificate, with interest at the rate of ten per cent per annum; *it was held* that, in an action upon the certificate, parol evidence could not be received, to prove that it was a part of the contract that the principal and interest money mentioned in the certificate should be payable at P. in the state of New York.

Where parties choose to put their contract in writing, courts are to ascertain the place where the contract was made, the time when and the place where the money is payable, as well as the rate of interest, by reference to the written instrument.

APPEAL from a judgment entered at a special term, on the verdict of a jury. The action was upon a certificate of deposit, dated at the "Banking House of Tallman, Powers & McLean, Davenport, Iowa, May 2, 1859," certifying that the plaintiff had deposited in that bank $2000, payable to the order of himself one year from the date, on the return of said certificate, with interest at the rate of ten per cent per annum, and signed by the defendants. The defense was usury.

*Jackson & Wilkinson,* for the plaintiff.

*J. F. Barnard,* for the defendants.

Potter *v.* Tallman.

*By the Court*, BROWN, J.   A stipulation to pay a high and unusual rate of interest, in a contract for a loan of money, has come to be regarded as an object of suspicion, if not an element of positive danger.   In government loans it indicates impaired credit, wasteful expenditure, an exhausted exchequer, and probably an impoverished people.   While such a provision, in a contract between private persons, suggests the thought that speculative enterprises, uncertain and hazardous adventures are the sources upon which the borrower relies to realize the exorbitant interest, rather than the sure but moderate profits of well considered and well conducted business. The relations between labor and capital are regulated by laws which do not admit of any departure from principles which science and experience have concurred to establish ; and those who make such investments will, in many instances, see their error in the repudiation of the debt, or the insolvency of the borrower.   The example furnished by Joseph Potter, the plaintiff in this action, tends to confirm the truth of what has been said.   He loaned his money and reserved interest at the rate of 10 per cent, and when, at the maturity of the contract, he reclaims and attempts to recover his money, in place of payment and liquidation he is met by a defense which strikes at the existence of the debt, and threatens to punish his temerity with the costs of the prosecution.

John P. H. Tallman, William McLean, Edwin R. Pease, together with one Charles Powers, since deceased, were bankers dealing in money and the business of exchange, under the name and firm of Tallman, Powers & McLean, having their banking house at Davenport in the state of Iowa.   On the 2d May, 1859, Joseph Potter, the plaintiff, deposited with them the sum of $2000 upon interest, and as evidence thereof received a certificate numbered 521, and dated at the "Banking House of Tallman, Powers & McLean, Davenport, Iowa, May 2, 1859," which said that "Joseph Potter has deposited in this bank $2000, payable to the order of himself

one year from the date, on the return of this certificate, with interest at the rate of ten per cent per annum," and signed " Tallman, Powers & McLean." At the trial, before Mr. Justice EMOTT, in October, 1860, the plaintiff produced and read the certificate, in evidence, the making of which was not disputed, and then rested. The defense was usury ; to prove which John P. H. Tallman was called as a witness, and testified he was one of the banking firm of Tallman, Powers & McLean. The certificate was made at his office, in the city of Poughkeepsie. It was given to renew in part a certificate of similar import, given for $2600, and dated May 1, 1858. The money upon this latter certificate was loaned at his office, in Poughkeepsie, the day it bore date. When it matured he paid to the plaintiff $260 for the interest, $600 on account of the principal, and for the balance executed the certificate which is the subject of this action. Both himself and the plaintiff were residents of Dutchess county in the state of New York, and had been, for 15 or 20 years. The agreement, at the time of giving the last certificate, was to extend the loan for the balance ($2000) for one year, at ten per cent interest. The money, when it was obtained, was transmitted to the defendants' banking house in Davenport, Iowa, through Carpenter & Vermilyea, bankers, of the city of New York, upon whom the defendants' house at Davenport drew its drafts for the payment of money. At this stage of the trial the defendants offered to prove that it was part of the original contract of loan of the $2600, and part of the agreement to extend the day of payment for the $2000, mentioned in the certificate upon which the action is brought, that the principal and interest money should be payable in Poughkeepsie, Dutchess county. The evidence was objected to by the plaintiff, and rejected by the court as inadmissible, and the defendants excepted. This offer and the decision thereon presents the real question in controversy, and upon its decision depends the result of the plaintiff's right to recover in the

HARVARD
LAW SCHOOL
LIBRARY

Potter v. Tallman.

action. It suited the parties to put the contract in writing, and we are therefore to ascertain the place where the contract was made, the time when and the place where the money was payable, as well as the rate of interest, by reference to the certificate itself. The primary object of resorting to a written instrument, in which to incorporate the stipulations of the agreement, was to avoid the uncertainty, the doubt and the insecurity of a contract resting merely in parol. Upon its face it professes to have been made at Davenport in Iowa. This it does in plain and explicit terms. And although the paper was signed and the money paid elsewhere, the act was none the less the act of a firm of Iowa bankers, for the money was remitted to the firm in Davenport, was placed upon its books and employed in the regular course of its business. The loan was not to John P. H. Tallman, individually, and the name and certificate of the Iowa banking firm resorted to as a cover to conceal the real nature of the transaction, but it was loaned to the firm, to be employed, and doubtless was employed, by it, in the course of its legitimate business in the state where the banking house was established. To make the transaction an Iowa contract, it surely was not indispensable that Joseph Potter should carry the money into Iowa and deliver it at the counter of the defendants' banking house. It was none the less an Iowa contract if he paid it to the agent, or to a partner of the firm, in Poughkeepsie or elsewhere, for the use of the firm. Money loaned by a London banker to a bank in New York, upon a certificate of deposit dated in New York and payable at the borrower's banking house there, would be regarded every where as a New York contract, to be construed and regulated by the laws of the state of New York; notwithstanding the money may have been paid to the borrower's agent in London, or elsewhere out of New York. The contract reserved ten per cent interest for the use of the money, and if it was a New York contract then it was clearly usurious, and prohibited by the

laws of the state. But if it was an Iowa contract, to be regarded as having been made there, and to be executed there, then it is not usurious, because the rate of interest was not greater than that fixed and allowed by the laws of the latter state. The offer of the defendants, which the judge rejected as illegal and inadmissible, was nothing else than an effort to vary and change the terms of the written contract by parol evidence—to show the money was not to be repaid at Davenport, Iowa, where the contract plainly said it was to be repaid, but in Poughkeepsie, in the state of New York, where the certificate in as plain terms said it was not to be repaid, and thus bring it within the prohibition of the statute of usury of the latter state. A reference to some few authorities will show that parol evidence is not admissible for any such purpose. "Verbal evidence is not admissible to contradict or vary an absolute agreement to pay money on the face of a bill or note, although, as between the original parties, evidence may be adduced to establish a defense on the ground of total want of consideration, failure of it, or illegality. And if the instrument on the face of it purport to be an absolute engagement for the payment of money, no evidence of a verbal agreement made at the same time, qualifying the liability to pay the bill, or of a verbal agreement at the time to renew or give indulgence, will be admissible to defeat the action on the bill or note. This general rule is not confined to bills of exchange, but extends to all written contracts. Therefore, where a promissory note on the face of it purported to be payable on demand, it was held that parol evidence was not admissible to show that at the time of making it, it was agreed that it should not be payable until after the decease of the testator, or until the estates of the maker had been sold, or until the payee should deliver up the possession of certain premises, or should not be payable if the maker's allowance under the commission against him should not be sufficient to pay the amount; or not payable until a final

dividend of a bankrupt's estate should have been made. And if a note be made payable nine months after date, parol evidence of the holder's agreement to give time if at maturity it was not convenient, is inadmissible," &c. (*Chitty on Bills,* 142, 10*th ed.*) "Time of payment is part of the original contract, and if no time of payment is expressed in a note, it is payable immediately; and parol evidence is inadmissible to show a different time of payment." (*Thompson* v. *Ketcham,* 8 *John.* 189.) Upon these authorities, the judge at the trial was clearly right in excluding the evidence offered for the purpose of varying the terms of the written contract.

Being an Iowa contract, it became incumbent on the defendants to show that it was not valid, or in other words was usurious, by the laws of that state. No attempt was made to show any thing of that kind, because no such law exists there. If it was valid and obligatory upon the contracting parties, there, it was so every where. "A contract valid by the law of the place where it is made is, generally speaking, valid any where *juri gentium,* and by tacit consent. The *lex loci contractus* controls the nature, construction and validity of the contract. And, on this broad foundation, the law of contracts, founded on necessity and commercial convenience, is said to have been originally established. If the rule were otherwise, the citizens of one country could not safely contract or carry on commerce in the territories of another. The necessary intercourse of mankind requires that the acts of parties valid where made should be recognized in other countries, provided they be not contrary to good morals nor repugnant to the policy and positive institutions of the state." (2 *Kent's Com.* 454.) But more than all that, it is now understood to be the law of the English courts that the rate of interest on loans is to be governed by the law of the place where the money was to be used or paid, or to which the contract had reference. (*Thomson* v. *Powell,* 2 *Sim. R.* 194. *Hosford* v. *Nichols,* 1 *Paige,* 220.)

The judge directed the jury to find a verdict for the plain-

tiffs for $2284.43, the amount of the principal and interest due upon the certificate, in the correctness of which direction we entirely concur.

The judgment should be affirmed.

[ORANGE GENERAL TERM, September 9, 1861. *Emott, Brown* and *Scrugham,* Justices.]