JAMES G. ROSS, Respondent, v. SAMUEL P. WIGG,
Appellant.

*Statute forbidding the use of a fictitious firm name — not applicable to a contract made
in Canada by a resident thereof — who may take an affidavit out of this State to be
used in it — Code of Civil Procedure, sec. 844 — it applies to foreign countries —
form of jurat and of the certificate of the clerk — 1870, chap. 208.*

On December 18, 1882, the plaintiff, who then resided, and for a long time prior
thereto had resided, and carried on business in Canada under the name of
"Ross & Co.," entered into a written agreement at Quebec, which was dated
and made at that place, by which, under the name of Ross & Co., he sold to
the defendant the lumber business, then carried on by the plaintiff at Oswego,
in the State of New York, at which place the plaintiff had been conducting a

branch of his business under the said name of "Ross & Co." By the terms of the agreement the defendant was to remit all his receipts from the business as fast as received, with certain specified exceptions, to the plaintiff in Canada, and to pay the whole amount due within nine months from January 1, 1883.

In an action by the plaintiff to recover the amount due upon the contract, brought in March, 1884:

*Held*, that the action could not be defended upon the ground that the contract was void under the statute of this State prohibiting the transaction of business under fictitious names.

That such statute did not apply to commercial copartnerships located and doing business in foreign countries which are permitted to use " their styles or firms of their houses in this State."

The word " State," as used in section 844 of the Code of Civil Procedure, providing that " an oath or affidavit required, or which may be received, in an action, special proceeding or other matter may be taken without the State, except where it is otherwise specially prescribed by law, before an officer authorized by the laws of *the State* to take and certify the acknowledgment and proof of deeds to be recorded in this State," refers, in each instance, to the State of New York and not to the State in which the oath or affirmation is taken, and such oath may be taken by any person authorized by the laws of this State to take and certify the acknowledgment of deeds to be recorded in this State, even though he be not authorized to take the acknowledgment to deeds to be recorded in the State where he resides. (FOLLETT, J., dissenting.)

This section applies to oaths and affirmations taken in foreign countries as well as to those taken in the different States of the Union. (FOLLETT, J., doubting.)

It is not necessary that the certificate of the officer taking such an oath or affirmation should expressly state that the officer knew, or had satisfactory evidence, that the person making the oath was the individual described in and who executed the instrument as is required in the certificate of. acknowledgment of deeds by chapter 208 of 1870.

The certificate of the clerk of the County Court of the county of York, Canada, to an oath made before the county judge of that county, complied in all respects with the requirements of the said act of 1870, except that instead of saying that the clerk was " well acquainted with the handwriting of such judge and verily believes his signature genuine," it said that " the name of said Judge JOHN BOYD subscribed to the above jurat is to me known to be the autograph signature of said Judge JOHN BOYD."

*Held*, that this was a substantial compliance with the statute.

The facts which will authorize the issue of a warrant of attachment and an order of arrest in an action upon a contract, upon the ground that the defendant is about to dispose of and remove his property with intent to defraud his creditors, considered and held to exist in this case.

APPEAL from an order of Justice CHURCHILL made at chambers, denying a motion to vacate an order of arrest and a warrant of attachment.

On the 18th of December, 1882, the plaintiff resided at Quebec, Canada, and had for a long time carried on business under the name of "Ross & Co.," without having any partner. For six years prior to that date he had been engaged in the lumber business at Oswego, N. Y., under said firm name, having no partner therein. On that day, at Quebec, Canada, by a written agreement then and there dated, he, in the name of "Ross & Co.," sold said lumber business carried on at Oswego, N. Y., including stock on hand, accounts, etc., to the defendant for the sum of $87,743.32, of which no part was paid down or secured. The defendant, who at the time was the confidential agent and manager of the plaintiff, agreed to remit to him all collections and receipts from said business weekly as fast as received. By the terms of the agreement he was permitted to use, not exceeding $8,000, from such collections, to erect a dock, which sum he was to repay within two years from January 1, 1883, with interest at seven per cent, payable semi-annually, and a commission of two and one-half per cent per annum. Interest on the purchase-price was to be computed every six months, at the rate of seven per cent per annum, and the whole amount, excepting the $8,000 was to be paid within nine months from January 1, 1883. The defendant was also to pay all of the debts of the plaintiff contracted in said business and unpaid at the time of the sale.

Subsequent to such sale the plaintiff paid, on account of such outstanding debts, two drafts, drawn in November, 1883, amounting to $6,521.25, the defendant having neglected and refused to pay the same. Between December 21, 1882, and June 23, 1883, the plaintiff, by the name of "Ross & Co.," accepted for the accommodation of the defendant six drafts, amounting to $17,735.23, and paid the same as they matured. Each of the eight drafts above named was drawn, dated and made payable in Canada. Upon this indebtedness, amounting in all to the sum of $111,024.65, exclusive of the $8,000 not yet due, the defendant paid $29,791.21, the last considerable payment having been made August 1, 1883. About the 1st of March, 1884, the plaintiff commenced this action, which is upon contract, to recover from the defendant the balance unpaid of $81,233.44. Upon the verified complaint, alleging the foregoing among other facts, and the affidavits of the plaintiff and one Pousette, setting forth said cause of action, and tending to show that the

defendant was about to dispose of and remove his property, with intent to defraud his creditors, an order of arrest and, a warrant of attachment were granted by Justice CHURCHILL on the 7th of March, 1884. The sheriff of Oswego county thereupon attached certain property of the defendant, but of what value does not appear, and on the 10th of March, 1884, arrested the defendant and confined him in the jail of said county, in default of the bail required by the order of arrest, to wit, $20,000.

The affidavit of said Pousette was taken before a judge in Canada, whose certificate was as follows, viz. :

" The above affidavit was subscribed and sworn to before me, the undersigned, the judge of the County Court of the county of York, the same being a court of record of the Province of Ontario, having a seal, at the court-house in Toronto, Ontario, this March 4, 1884.

(Signed)    " JOHN BOYD, <br> " <em>Judge C. C. C. Y.</em>"

A clerk's certificate was attached in these words, viz. :

" *Dominion of Canada, Province of Ontario, County of York, ss. :*

" I, Walter McKenzie, who am clerk of the County Court of the county of York, in said Province of Ontario, hereby certify that said County Court of the county of York is a court of record of said Province of Ontario, in the Dominion of Canada, and that said Court has a seal; that JOHN BOYD, Esq., is the judge of said court, and that the name of said Judge JOHN BOYD subscribed to the above jurat is to me known to be the autograph signature of said Judge JOHN BOYD.

" Witness my hand and the seal of said court, at the city of Toronto, in said Province of Ontario, this March 4, 1884.

(Signed)    " WALTER McKENZIE,

[L. S.]   " *Clerk of the County Court of the County of York.*"

On the 19th of March, 1884, the defendant moved to vacate both the order of arrest and the warrant of attachment upon the same papers on which they were granted, and before the same justice who granted them. The motion was heard at chambers, March twenty-second, and denied March 28, 1884, but without prejudice to any application that might be made upon affidavits or

other proof to vacate said provisional remedies, or to compel the plaintiff to elect between them, under section 719 of the Code of Civil Procedure, or to reduce the amount of bail required by the order of arrest. From the order denying said motion the defendant brings this appeal.

*W. H. Kenyon*, for the respondent.

*George N. Burt* and *W. F. Coggswell*, for the appellant.

VANN, J.:

As the motion to vacate was founded only on the original papers, the statements contained therein are, for the purposes of this appeal, to be regarded as true, and, if they establish a *prima facie* case against the defendant, he should be required to satisfactorily answer or explain them before asking that important remedies for the temporary security of the plaintiff should be set aside.

It does not appear that any of the several contracts set forth in the complaint was entered into in violation of the usury laws of this State or of the statute prohibiting persons from transacting business under fictitious names. (3 R. S. [7th ed.], p. 2253; Laws of 1833, chap. 281; Laws of 1849, chap. 347.) These statutes are penal laws and have no extra territorial force. (*The Western T. and C. Co.* v. *Kilderhouse*, 87 N. Y., 430.) A contract will not be adjudged illegal when it is capable of a construction making it valid. (*Lorillard* v. *Clyde*, 86 N. Y., 384; *Ormes* v. *Dauchy*, 82 id., 443.) The principal contract upon which this action is founded is the bill of sale which was both dated and executed at Quebec, Canada. It purports to transfer a lumber business at Oswego, in this State, including stock on hand, accounts and mortgages. The plaintiff, a resident of Canada, had conducted this business at Oswego under the name of "Ross & Co.," and apparently had thus acquired the property and interest transferred. Assuming that he had carried on the business in violation of law he did not forfeit the property he had acquired thereby or place it outside of legal protection. (*Wood* v. *Erie R. R. Co.*, 72 N. Y., 196, 200.) If he violated the statute he was liable to punishment therefor, but the property thus acquired was still his and was subject to sale and transfer by any of the modes known to the usages of business. As

the bill of sale was given not to carry on, but to terminate and close out the lumber business, it is doubtful if it could be held invalid, even if it had been executed and was to be performed within this State. Such a transaction does not come within the evil which the statute was designed to prevent, as it does not impose upon the public or induce credit to be given upon a false basis. (*Wood* v. *Erie R. R. Co.*, *supra.*) Moreover the act in question (Laws of 1833, chap. 281), does not apply to commercial copartnerships located and transacting business in foreign countries, as they are permitted to use " their styles or firms of their houses in this State." (Laws of 1849, chap. 347.) The two statutes when construed together appear to authorize a single person, located and transacting business under a firm name in a foreign country, to use such firm name in carrying on a branch of that business in this State.

The bill of sale does not in terms state where it is to be performed, but as it binds the defendant to " remit " to the plaintiff, weekly, all collections, the presumption is that he was to remit to the plaintiff at his place of residence. But if it is silent as to the place of performance, the rights and liabilities of the parties under it are to be determined by the *lex loci contractus.* (2 Parsons on Contracts, 582; *Pomeroy* v. *Ainsworth*, 22 Barb., 118, 130; *Northrup* v. *Foot*, 14 Wend., 249.) Therefore if it was valid by the laws of Canada, where it was made and dated, it is valid everywhere. (*Merchants Bank of Canada* v. *Griswold*, 72 N. Y., 474; *Potter* v. *Tallman*, 35 Barb., 182; Story on Conflict of Laws § 282.) The burden of showing that it was invalid by the laws of that province rests upon the defendant. (*Cutler* v. *Wright*, 22 N. Y., 472; *Thompson* v. *Ketcham*, 8 Johns., 189.) All of the contracts except the bill of sale were by their terms to be performed in Canada. The acceptances were all drawn, dated, made payable and actually paid by the plaintiff there. Whether, therefore, the action is based upon the drafts themselves or upon the implied promise to pay, springing from the fact of payment by the plaintiff for the benefit of the defendant and at his request, they are Canadian contracts and are to be governed by the laws of the place where they were made.

The affidavit of Alfred P. Pousette was considered at the time

of the original application for these provisional remedies, but not upon the motion to vacate, as the learned justice held that it was not certified as required by section 844 of the Code of Civil Procedure. By that section, any officer authorized by the laws of this State to take and certify the acknowledgment and proof of deeds without the State, to be recorded in this State, is authorized to take an affidavit without the State to be used in an action in this State. The section is new and its object, according to the report of the commissioners who prepared it, was to empower all officers authorized to take acknowledgments to administer oaths. (Vol. 3, Commissioner's Report, § 817, note; Throop's Code, § 844.) The word "State," as used in this section, in each instance, means the State of New York. It was enacted with reference to the laws of this State, not of some other State. The section does not mean, as claimed by the appellant, that the affidavit may be taken before an officer authorized by the laws of a foreign State, or the State of his residence, to take and certify the acknowledgment of deeds. The expression, as used in this section, "before an officer authorized by the laws of the State to take and certify the acknowledgment and proof of deeds," means an officer thus authorized by the laws of this State. There are many such officers and many statutes have been passed upon the subject, which were in force at the time of the enactment of the Code of Civil Procedure. (3 R. S. [7th ed.], 2226; Laws 1829, chap. 222; Laws 1845, chap. 109; Laws 1847, chap. 170; Laws 1848, chap. 195; Laws 1850, chap. 270; Laws 1858, chap. 259; Laws 1863, chap. 246; Laws 1870, chap. 208; Laws 1875, chap. 136.) By some of these statutes the officers authorized to take acknowledgments are empowered to take affidavits, and the commissioners in their note to section 817 (now 844) say: "It is thought better that all officers authorized to take acknowledgments should be empowered to administer oaths, and that their acts should be authenticated in the same manner in both cases." We think that this is what the legislature intended in enacting the section in question.

By chapter 208, Laws of 1870, acknowledgment of deeds may be taken before the judge of any court of record within the Dominion of Canada. By virtue of this act, and of section 844 of the Code, Judge BOYD was authorized to take the affidavit of Mr.

Pousette, but a question is raised as to its authentication. The act of 1870 (*supra*) provides that no acknwledgment shall be valid unless the officer taking the same knows or has satisfactory evidence that the person making it is the individual described in and who executed the instrument. It also requires that a certificate of the clerk should be attached, authenticating the court, office, officer, his handwriting, etc. It is insisted that the affidavit was not properly certified because the judge did not state that he knew Mr. Pousette or had satisfactory evidence of his identity. Section 844 of the Code does not require that the certificate of the judge should state this. The statute of 1870, by implication at least, does require it in the case of deeds. Nearly all other statutes relating to the acknowledgment of deeds, whether taken within or without the State, also require it, yet it is not required in the jurat of an affidavit. Section 844 does not state what the certificate of the judge must contain, but simply requires that the affidavit must be "certified by him to have been taken before him." It does require that the judge's certificate should be authenticated by a certificate of the clerk as to his official character and the genuineness of his signature. In other words, the form of the clerk's certificate is, while the form of the judge's certificate is not, prescribed by the statute, so far as an affidavit is concerned. Thus the analogy of all other statutes relating to jurats and acknowledgments is observed. We do not hold that it would be proper for an officer, either within or without the State, to take an affidavit without either knowing the affiant or having satisfactory proof of his identity. We simply hold that such fact need not be certified by the officer in the jurat.

The certificate of the clerk literally follows the requirements of the act of 1870 in all respects, except that instead of stating in the language of the statute that "he is well acquainted with the hand-writing of such judge, and verily believes his signature genuine," he certifies that "the name of said Judge JOHN BOYD, subscribed to the above jurat, is to me known to be the autograph signature of said Judge JOHN BOYD." We think this is a substantial compliance with the statute, because it not only implies all that the statute requires, but includes more and furnishes a better safeguard. (*Meriam* v. *Harsen*, 4 Edw. Ch., 70; affirmed, 2 Barb. Ch., 232;

*Jackson* v. *Gumaer*, 2 Cow., 552; *Jackson* v. *Livingston*, 6 Johns., 149.)

The moving papers show that the defendant was indebted to the plaintiff in the sum of $89,233.44, of which all but $8,000 had been past due for five months, during which period only fifty dollars had been paid thereon; that this debt was for the purchase-price of and for moneys advanced in a lumber business that he was conducting, and from which he received large sums of money; that instead of remitting his collections to the plaintiff weekly, as he had agreed in writing to do, he retained substantially all that he received during the period of seven months immediately preceding the granting of the provisional remedies in question, and although he admitted that he had large sums on hand, yet he refused to pay the same to the plaintiff; that he ceased to make payments on this debt in August, 1883, yet continued after that to sell and reduce his stock and property until not more than $40,000 worth remained; that he had substantially no property aside from said business which he had purchased from the plaintiff wholly on credit in December, 1882, and which he had promised to pay for by October, 1883, with the exception of $8,000; that in March, 1884, when the provisional remedies were granted, he was owing the plaintiff $89,233.44, or $1,490.12 more than the original purchase-price, so that his indebtedness to the plaintiff during the fourteen months that he had carried on the business had increased instead of diminished; that in November, 1883, he refused to give plaintiff a mortgage upon a dock, then recently constructed by him, for the amount of plaintiff's money invested therein; that during the same month, and after his large debt to the plaintiff was past due, he attempted to settle $10,000 that he had taken from the lumber business upon the lady to whom he was engaged to be married, and actually paid over the money to trustees for her benefit, stating that he did it so that if anything happened in regard to his business she would have that sum to fall back upon; that at the same time he further stated that he had plaintiff in his hands and could do with him as he liked; that he never intended to pay him at the time agreed upon, and should not pay him until he got ready; that he intended to bring plaintiff to his terms, and could fix his property in twenty-four hours so that he could get nothing out of it; that said $10,000 was subsequently repaid him

by the trustees upon the refusal of the lady's father to allow the marriage to take place; that in January, 1884, he said to plaintiff: "Why do you watch me so? This is the fourth time you have been here; if you are not satisfied, buy me out," and upon the plaintiff then offering to buy him out he refused to sell, defied the plaintiff and told him to do his best; that in February, 1884, he admitted that he had $20,000 that he could pay to plaintiff, but refused to do so unless the plaintiff would give him credit to draw for a like amount, and when this was declined he said to plaintiff: "If you push me for payment I will not spare you; I will make you lose all I can;" that subsequently he withdrew even that offer, but offered to pay $10,000 if plaintiff would allow him to draw for a like amount, and when the plaintiff declined this, but asked him to pay said $10,000 on his debt, he refused, saying that he would hang on to the money; that on February 12, 1884, he told said Pousette that he intended to sail for England in about ten days; that on the seventeenth of that month he mortgaged to his brother for $1,700 a piece of real estate worth $4,000, but which was subject to prior mortgages for $2,276; that the defendant is a widower with one child, and never resided in the United States until he purchased said business; that on the fourth of March he was in the city of New York with three trunks, and on the sixth and seventh of March plaintiff received telegrams from his agent to look after the movements of defendant in that city, stating that the defendant was expected to sail for Europe on the eighth; that on the seventh the clerk of the hotel where the defendant boarded, in Oswego, informed the plaintiff that the defendant had gone to Europe; that the week before the defendant told the plaintiff that he intended to go to England.

We think that these, with other facts not recited, made out a *prima facie* case, and gave the justice jurisdiction. Where a debtor who owes a large debt that is past due, and has a large sum of money that he ought to pay upon that debt, refuses to pay anything to his creditor upon demand made, without giving any explanation for such refusal, slight evidence of a threatened removal or disposition of his property will authorize the inference of fraudulent intent. Where a man of very small estate is largely indebted and attempts to settle upon his intended wife a

large sum of money, wholly disproportioned to his property, so that if anything should happen to his business she would have something to fall back upon, it is evidence of fraudulent intent. Where a debtor declares that he does not intend to pay his chief creditor until he gets ready, but does intend to bring him to terms, and that he can speedily fix his property so that such creditor can get nothing out of it, and subsequently, when asked to pay something on account from nearly $20,000 he had on hand, refuses and threatens that if pushed for payment he will make said creditor lose all he can, such declarations and threats are not consistent with an honest purpose, and without proof of any furtive act, tend to show that he is about to remove or dispose of his property with intent to defraud. (*Gasherie* v. *Apple*, 14 Abb., 64; *Livermore* v. *Rhodes*, 27 How., 506.) When, under all these circumstances, it further appears that the debtor, having recently stated that he was going to England, gives a mortgage of $1,700 to his brother, leaves his business and is found in the city of New York with three trunks and with $20,000 in money either in his possession or unaccounted for, apparently intending to sail for England the next day, we think that the conditions of the statute relating to orders of arrest and warrants of attachment are fully complied with and that it is incumbent upon the defendant to answer or explain these allegations before a provisional remedy based thereon is set aside.

The order appealed from should be affirmed, with costs and disbursements.

HARDIN, P. J., concurred.

FOLLETT, J. (dissenting):

The affidavit of Pousette was verified before a judge of a county court of the Province of Ontario, which court has a seal. The clerk of the court certified, under seal, that the person before whom the affidavit was taken was at the time a judge of the court, and that the signature was genuine, but fails to certify that the judge was authorized by the laws of the Province to take and certify the acknowledgment and proof of deeds to be recorded in that Province.

Section 25 (2 R. S., 396), authorizing affidavits to be taken in foreign countries before a judge of a court having a seal, was repealed by chapter 417, Laws 1877. Affidavits in foreign countries may now be taken before commissioners appointed pursuant to chapter 136, Laws of 1875 (3 R. S., [7th ed.], 2230), or before the officers authorized by the fifth and sixth sections of chapter 3, part 2 of the Revised Statutes, to take the proof and acknowledgments of deeds conveying real estate, and also by any consul or vice-consul or minister resident of the United States appointed to reside at any foreign port or place. . (Chap. 206, Laws 1854.)

It is assumed by the counsel for the respective parties that the word "State," in section 844 of the Code of Civil Procedure, embraces foreign countries, and that the section is applicable to affidavits taken without the United States, which I greatly doubt. But conceding the correctness of the assumption for the purposes of this case, I think the affidavit is not properly certified. An affidavit, verified before an officer of another State, cannot be used in an action or special proceeding in this State (except where it is otherwise specially prescribed by law) unless the officer before whom the affidavit is verified is authorized by the law of his State to take and certify the acknowledgment and proof of deeds to be recorded in his State; and the official character of the officer, the genuineness of the signature, and that he is authorized to take and certify the acknowledgment and proof of deeds to be recorded in his State, must be certified under the name and official seal of the clerk, register, recorder, or a prothonotary of the county in which such officer resides, or by the clerk of any court thereof having a seal. (Code Civil Pro., § 844, chap. 195, Laws 1848, as amended by chap. 557, Laws 1867, 3 R. S. [7th ed.], 2224.) This section of the Code evidently has reference to the statute cited, and they must be read and construed together. Chapter 208, Laws of 1870, authorizes the officer before whom the questioned affidavit was taken to take the acknowledgment of deeds to be recorded in this State. The argument is that, by the section of the Code above cited, the authority to take affidavits to be used in the courts of this State is vested in and limited to such officials of other States as are by the statutes of this State authorized to take acknowledgments by virtue

of holding certain designated offices in other States. I think the intention was to vest the power of taking affidavits in all officers of other States authorized by the laws of the State of their residence, to take and certify the acknowledgment and proof of deeds to be recorded in the State of the officer's residence, and that the section does not authorize officials of other States to take affidavits to be read in the courts of this State, unless they are authorized by the law of the State of their residence to take acknowledgments of deeds to be recorded in the State of their residence, except in cases specially authorized by statute.

The clerk of a county, or of a court of another State, could not have official knowledge that a particular officer within his jurisdiction was authorized by the laws of this State to take the acknowledgment of deeds and could not make the required certificate. Some light may be thrown on this section and the reason for it, by briefly considering the course of legislation on the subject of acknowledgments taken in other States and territories.

Authority to take acknowledgments has from time to time been conferred by the statutes of this State upon designated officials of other States and territories. But is was found that officers accustomed to the discharge of such duties were designated by different official titles in the various States and territories, and it was inconvenient to designate appropriate officials in all the States and territories by their official titles. To avoid this difficulty, and to enlarge the number of officials who should possess this authority, chapter 195, Laws 1848, was passed (and amended by chap. 557 Laws 1867), vesting the power to take acknowledgments of instruments to be recorded and read in evidence in this State, in any officer of any other State or territory authorized by the laws thereof to take the proof and acknowledgment of deeds. It was the intention of the legislature not to restrict, but to enlarge the class of officials of other States authorized to take and certify affidavits to be used in this State. The affidavit of Pousette, verified March 4, 1884, is not certified as required by the section of the Code above cited, and cannot be considered on this appeal.

This construction of section 844 is in accordance with *Phelps* v. *Phelps* (6 N. Y. Civ. Pro. Rep., 117; affirmed, 32 Hun, 642); *Williams* v. *Waddell* (5 N. Y. Civ. Pro. Rep., 191); *Harris* v.

*Durkee* (Id., 376.) Excluding the affidavit of Pousette the evidence is insufficient to sustain the order of arrest and attachment. The order of the Special Term denying the motion to vacate the order of arrest and set aside the warrant of attachment should be reversed, with costs.

Order affirmed, with ten dollars costs and disbursements.