THE WESTERN TRANSPORTATION AND COAL COMPANY OF MICHIGAN, Appellant, *v.* JOHN KILDERHOUSE, Respondent.

The statute of this State regulating the rate of interest is merely a penal law and has no extra-territorial force.

Plaintiff, a corporation organized under the laws of Michigan, and doing business in that State, being the owners of a note made by I. & D., which, with other debts, was secured by a mortgage upon a propeller, before the maturity of the note, transferred it and the mortgage to a Detroit bank. After the maturity of the note I. went to Detroit and applied to

the bank for an extension of time, and it was agreed between him and the bank that provided the latter could get the consent of the indorsers of said note it "would extend the time of payment so that the amount could be paid in installments not exceeding for any part a period of three months." I. to give new notes for the amount, indorsed to the satisfaction of the bank, to be held as further and additional security, and to pay interest at the rate of ten per cent per annum. The bank procured the assent of the indorsers and sent one M. with the note and mortgage to Buffalo with directions to foreclose the mortgage unless the note was paid or said arrangement was carried out. I. thereupon procured and delivered to M. new notes made by him in pursuance of the agreement for the amount of the note and interest. Two of said new notes were dated at Buffalo, August 7, 1875, payable with seven per cent interest to the order of defendant, and by him indorsed for the accommodation of I., the latter also paid to M. a sum equal to the difference in interest between that called for by the notes and that agreed, to be paid, from the time of maturity of the old note until the new notes by their terms became due. M. delivered the new notes and the money to the bank at Detroit, which accepted the same and thereupon extended the time of payment as agreed. In an action upon the notes one of the defenses was usury. *Held*, that the contract for forbearance was a Michigan one, and as it was valid under the laws of that State was valid and enforceable here.

The new notes not having been paid at maturity the bank foreclosed the mortgage, the vessel was bid in by plaintiff for a sum insufficient to pay the debts secured by the mortgage, other than the $7,000 note. *Held*, that plaintiff was entitled to apply the proceeds of sale to the payment of the other debts secured by the mortgage, and whether so applied was immaterial. Until full payment, he was entitled to the benefit of all the collaterals.

(Argued December 2, 1881 ; decided January 17, 1882.)

Appeal from order of the General Term of the Superior Court of the city of Buffalo, made July 17, 1880, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought by the plaintiff, as indorsee, against the defendant, as indorser, upon two promissory notes dated "Buffalo, N. Y., August 7, 1875," made by William H. Ingram, one being for $2,564.74, due October 15, 1875, the other for $1,282.37, due November 16 thereafter, each payable with interest at seven per. cent, at the Third National Bank, to the order of John Kilderhouse (the defendant), and by him

indorsed for the accommodation of the maker. He was duly charged as indorser.

Defendant set up by answer, that at the time of making and indorsing the notes in question, Ingram was indebted to the plaintiff, upon a note of $7,000, made March 4, 1874, by Ingram and one Dennis, payable to the order of the plaintiff August 5, 1875, and with other debts secured by a mortgage executed by Ingram and Dennis, to the plaintiff, upon the propeller " Colin Campbell," its machinery and apparel — that the note was not paid, and Ingram desiring to obtain an extension and forbearance of time of payment thereof, on the 11th of September, at Buffalo, made a usurious agreement with the plaintiff for such forbearance, and in execution thereof the notes in question and other notes were made, indorsed and delivered to the plaintiff. And for a second defense allege that by a subsequent sale of the propeller, under the chattel mortgage and receipt of moneys thereon, the notes were paid.

The further facts appear in the opinion.

*George B. Hibbard* for appellant. The agreement for forbearance not having been made in this State, our usury laws do not affect it. (Story on Confl. of L., § 304 ; *Tilden* v. *Blair*, 21 Wall. 241 ; *Sands* v. *Smith*, 1 Neb. 108 ; *Bowen* v. *Bradley*, 1 Sheld. 226 ; *Hildreth* v. *Shepard*, 65 Barb. 265 ; *First Nat. Bk. of N. Y.* v. *Norris*, 1 Hun, 680 ; *Providence Co. Svgs. Bk.* v. *Frost*, 50 How. 173, affirming 14 Blatchf. 233 ; *Scudder* v. *Union Nat. Bk.*, 1 Otto, 406 ; *Cockle* v. *Flack*, 3 id. 344 ; *Dickinson* v. *Edwards*, 53 How. Pr. 40 ; *Wayne Co. Bk.* v. *Low*, 6 Abb. N. C. 76 ; *Merchants' Bk.* v. *Griswold*, 72 N. Y. 472, 481 ; *First Nat. Bk. of Toledo* v. *Shaw*, 61 id. 283, 293 ; Story on Confl. of L., § 287 *a ; Hosford* v. *Nichols*, 1 Paige, 220, 225 ; *Bk. of State of Georgia* v. *Lewin*, 45 Barb. 340 ; *Balme* v. *Wormbough*, 38 id. 352 ; *De Wolf* v. *Johnson*, 10 Wheat. 367, 383 ; Tyler on Usury, 87–90 ; *Wayne Co. Svgs. Bk.* v. *Low*, 81 N. Y. 566 ; *Rosa* v. *Butterfield*, 33 id. 665 ; *State Bk. of Ohio* v. *Hoge*, 35 id. 65 ; *Stewart* v. *Bramhall*, 74 id. 85 ; *Union Nat. Bk. of Pitts-*

*burgh* v. *Wheeler*, 60 id. 612; *Lee* v. *Selleck*, 33 id. 615; Story on Confl. of L. (7th ed.) 304 *b; Miller* v. *Tiffany*, 1 Wall. 298; *Berrien* v. *Wright*, 26 Barb. 208; *Pratt* v. *Adams*, 7 Paige, 615; *Cutler* v. *Wright*, 22 N. Y. 472; *Dickinson* v. *Edwards*, 77 id. 573; *Carson* v. *Ingalls*, 33 Barb. 657; *Williams* v. *Allen*, 7 Cow. 316.) The liability of the defendant in this action was fixed when the notes were protested. This liability can be enforced unless he shows some special equity (and the burden is on him in this respect) why it should not be enforced. (*First Nat. Bk.* v. *Wood*, 71 N. Y. 405; *Ross* v. *Jones*, 22 Wall. 516, 592; *In the Matter of Babcock*, 3 Story, 393, 398, 399; *The Lee Bk.* v. *Kitching*, 11 Abb. 435; 7 Bosw. 664.) An indorser is a party to commercial paper, and upon its protest becomes a principal debtor primarily liable for its payment, and the creditor is under no legal or equitable obligation, in the absence of a special equity absolutely requiring it, to proceed against any other security he may hold for the payment of the paper. (*First Nat. Bk. of Buffalo* v. *Wood*, 71 N. Y. 405; *Ross* v. *Jones*, 22 Wall. 576, 592.) The creditor is entitled to hold and enforce all his securities, and as he pleases; and to have and retain all the proceeds thereof until the whole debt is paid. (*Mathews* v. *Switzler*, 46 Mo. 301; *Farebrother* v. *Wadehouse*, 23 Beav. 18; *Union Bk. of Maryland* v. *Edwards*, 1 Gill & J. [Md.] 346; *Crump* v. *McMurtry*, 8 Mo. 408; *Kyner* v. *Kyner*, 6 Watts [Penn.], 221; *Chester* v. *Wheelwright*, 15 Conn. 561; *Blanton* v. *Rice*, 5 Monr. [Ky.] 253; Pitman on Principal and Surety [40 Law Library], 98; *Field* v. *Holland*, 6 Cranch, 8, 28; *Briggs* v. *Williams*, 2 Vt. 283; *McDaniel* v. *Barnes*, 5 Bush [Ky.], 183; *Langdon* v. *Ainsworth*, 46 Vt. 512; *Rawson* v. *Thomas*, 10 Ired. [N. C.] 165; *Planters' Bk.* v. *Stockman*, Freeman Ch. [Miss.] 502; *First Nat. Bk. of Buffalo* v. *Wood*, 71 N. Y. 405; *In the Matter of Babcock*, 3 Story, 393, 398; *Wright* v. *Simpson*, 6 Vesey, 713, 734; *Hayes* v. *Ward*, 4 Johns. Ch. 123, 132.) The purchase of the property by the plaintiff on the sale, under the power of sale,

contained in the mortgage, was proper. (*Alcott* v. *The Tioga R. R. Co.*, 27 N. Y. 546, 566.)

*George Clinton* for respondent. Plaintiff could not become a purchaser upon the sale, so as to cut off the equity of redemption. (*Buff. Engine Works* v. *Sun. Mut. Ins. Co.*, 17 N. Y. 403; *Pulver* v. *Richardson*, 3 Supr. Ct. 436; *Hess* v. *Fox*, 10 Wend. 436.) The court should apply the amount of the bid upon the foreclosure to the extinguishment of plaintiff's notes. (*Cowperthwaite* v. *Sheffield*, 1 Sandf. S. C. 416; *S. C.*, 3 N. Y. 243; *Bridenbecker* v. *Lowell*, 32 Barb. 9; 2 Pars. on Cont., 631, 633, 634; Story's Eq. Jur., § 459*d*, n. 3; *Seymour* v. *Van Slyke*, 8 Wend. 403; *Webb* v. *Dickinson*, 11 id. 62; *Dows et al.* v. *Morewood*, 10 Barb. 183, 189; *Hunter* v. *Osterhoudt*, 11 id. 33; *Wheeler* v. *Cropsey*, 5 How. Pr. 288; De Colyar on Sureties, 427.) The consideration upon which the notes in suit were given was usurious and the notes are, therefore, void. (*Swartwout* v. *Payne*, 19 Johns. 294; Tyler on Usury, 404, 409; *Gray* v. *Brown*, 22 Ala. [N. S.] 262, 273; Wharton on Conflict of Laws, § 401; *Jacks* v. *Nichols*, 1 Seld. 178; *Cutler* v. *Wright*, 22 N. Y. 474; *Bowen* v. *Newell*, 13 id. 290; *Curtiss* v. *Leavitt*, 15 id. 9, 88, 227; *Andrews* v. *Ponds*, 13 Pet. (U. S. Sup.) 65, 77, 78; *Fanning* v. *Consequa*, 17 Johns. 511; *Hosford* v. *Nichols*, 1 Paige, 220; *Peck* v. *Mayo*, 14 Vt. 33; *Sharp* v. *Davis*, 7 Baxter [Tenn.], 607; *Gebhard* v. *Ry. Co.*, Alb. L. J., May 1, 1880, p. 352.) A note dated and payable in the same State is governed by the laws of that State. (*Jewell* v. *Wright*, 30 N. Y. 259; *Dickinson* v. *Edwards*, A. L. J., Nov. 1, 1879; 77 N. Y. 573, 578; *Cloyes* v. *Hooker*, 4 Hun, 231; *Hildreth* v. *Shepard*, 65 Barb. 265; *Hackettstown Nat. Bk.* v. *Rea*, 64 id. 175; *Croninger* v. *Crocker*, 62 N. Y. 151.) The place where a contract is concluded, not the place it is negotiated, is the "place of the contract." (*Lee* v. *Sellick*, 33 N. Y. 615; *Chapman* v. *Robertson*, 6 Paige, 627; Wharton on Conflict of Laws, §§ 419, 420, 421; *Hyde* v. *Goodenow*, 3 N. Y. 266; *Cook* v. *Litchfield*, 9 id. 280; *Boyer* v. *Edwards*, 4 Peters, 111–

123; *Milliken* v. *Pratt*, Alb. L. J., No. 481, p. 311, April 19, 1879; 125 Mass. 374; *Hart* v. *Willis*, Sup. Ct. of Iowa, Alb. L. J., Nov. 8, 1879, p. 377; *Bamler* v. *Eddy*, 33 Ark. 645.) A written instrument has no "inception" until delivery. (*White* v. *Stillman*, 25 N. Y. 541.) The place of the contract is the place where it is delivered or the bargain consummated. (Daniels on Neg. Inst., § 868; *Hawley* v. *Keeler*, 53 N. Y. 114; *Com. Bk.* v. *Warren*, 15 id. 577; Wharton on Agency, §§ 76, 77; Add. on Cont. 15; *Kingston on Hull* v. *Petch*, 24 L. J. Exch. 23; *Honeyman* v. *Marryatt*, 26 id. 619; *Brown* v. *N. Y. C. R. R. Co.*, 44 N. Y. 79; *Aiken* v. *Davis*, 45 Barb. 44; *Smith* v. *Bannister*, 27 N. H. 244; *R. E. Mut. F. Ins. Co.* v. *Poessle*, 1 Gray, 336; *Weatherly* v. *Covington*, 3 Strobh. 27; *Nat. Bk.* v. *Hall*, 10 U. S. 43; *Jacks* v. *Nichols*, 1 Seld. 178.) The notes in suit having been indorsed by the defendant, and having been delivered in Buffalo, the contract of the indorser is to be governed by the laws of New York, not by those of Michigan. (*Hodges* v. *Shuler*, 22 N. Y. 114; *Cook* v. *Litchfield*, 9 id. 279; *Lee* v. *Selleck*, 33 id. 615.)

Danforth, J. As the plaintiff had judgment on the issues, and the findings of fact by the trial judge were not disturbed by the General Term, the order of reversal must stand, if at all, upon some error of law committed by him. (Code of Civil Procedure, § 1338.) The first ground of defense has been fully met by the finding that the notes were not tainted with usury, and this is clearly so, if, as is also found, they were given in execution of a contract made, not in Buffalo, but in Michigan, and with reference and subject to the laws of that State.

It is very well settled that penal laws have no extra-territorial force (*Charles* v. *The People*, 1 N. Y. 180; *Ormes* v. *Dauchy*, 82 id. 443); and the statute of New York, regulating the rate of interest, is merely a penal law. It is not claimed that the law of Michigan invalidates the contract. It is also well to observe that the defendant was bound, not only to set up the usurious contract in his answer, specifying its terms and the particular facts relied upon to bring it within the prohibition of the

statute (*Manning* v. *Tyler*, 21 N. Y. 567 ; *Dagal* v. *Simmons*, 23 id. 491), but to prove them substantially as alleged. In the latter respect, there was an evident failure. The debt which was to be extended was stated as due to the plaintiff, the contract of extension to have been made with the plaintiff, and Buffalo the place where it was made. None of these things are established. Nor is it claimed by the respondent that either circumstance of a different party or place was introduced into the transaction as a cover or device to conceal usury. Whatever the transaction was, there was neither subterfuge nor concealment.

To see what the contract was, and between what parties entered into, and how the plaintiff is affected by it, we must resort to the words of the trial judge. From them, we find that the plaintiff is a corporation under the laws of Michigan, there doing business; that the $7,000 note and the mortgage were made to it as above stated ; but we also learn that before the note matured, both were assigned to the People's Saving Bank of Detroit, and continued to be owned by it; that after the maturity of the note, and between August 20 and 25, Ingram went to Detroit, sought the plaintiff, and of it requested an extension. He was then informed of the fact of the transfer of the note to the People's Bank, and to it renewed his application "for a further period of time for payment." In reply, the bank stated, "that the rate of interest it charged and demanded upon loans and for the forbearance of moneys due upon notes like that in question was ten per cent per annum ; that provided it could obtain the consent thereto of the indorsers of the $7,000 note, and he, Ingram, would give a new note or notes for the amount, indorsed to the satisfaction of said bank, to be held by the bank as further and additional security, and pay ten per cent per annum, the bank would upon these terms extend the time of payment so that the amount could be paid in installments, not exceeding for any part a longer period than three months." He assented to these terms, and promised the bank to make and deliver new notes for the amount of the past-due note, payable in installments within three months, and pay

ten per cent interest, and stated to the bank " he would return to Buffalo to get the indorsements of the new notes so to be given."

In pursuance of this agreement, the bank procured the consent of the indorsers of the note, then past due, to the extension of the time of payment, as requested by Ingram, and afterward sent one Monaghan with the note and mortgage to Buffalo. On the 11th of September, 1875, he there saw Ingram, informed him that he had been sent by the bank and that his directions were at once to foreclose the mortgage "unless the amount of said past-due note should forthwith be paid, or the arrangement he (Ingram) had made at Detroit for the extension of his time of payment should be carried out." Ingram on the same day procured and gave to Monaghan the notes in suit and two other notes indorsed by one Clark, the four notes making the full amount of the past-due note, and interest and notary's fees thereon. He also paid to Monaghan a sum equal to the difference of interest called for by the new notes, and that charged by the bank from the time of maturity of the old note until the new notes would by their terms become due. Monaghan delivered to the bank at Detroit the money and the notes, and " they accepted the same and extended the time of payment of the amount secured by the said past-due note according to the times the said new notes were made payable." They were not paid, and after maturity the bank foreclosed the mortgage; the vessel was bid in by the plaintiff for a sum so much less than the amount secured by it, that no portion applied upon the $7,000 note, and it being paid by the plaintiff, was with the notes in suit transferred and assigned to it.

Upon these findings it seems to me, both upon principle and authority, that the construction of the trial judge must be affirmed. Interest is the creation of positive law. The capacity to reserve it is conferred by the law of the place where the creditor becomes such, that is, where he loans money, or forbears a chose in action — in this case a debt already due — and to this point the various and far-reaching arguments of the

learned counsel must be reduced. The rights of the bank and Ingram became fixed at the time of making the contract for such forbearance, and the plaintiff and defendant must abide by their conditions. When then was the agreement made by which the bank promised to forbear day of payment, and by which it became entitled to compensation therefor? An answer to this question will necessarily show where the agreement was made. The only time the parties were together or in communication was August, 1875. The bank then yielded to the application of the debtor and consented to an extension upon certain precise and defined terms. They were accepted by the debtor. At that moment the minds of the parties met. This was in Michigan. That State, therefore, was not only the place of contract, but on the part of the bank was the place of performance. Ingram complied with the contract afterward, in Buffalo. He did nothing more. The agent of the bank had no authority save to accept the fruits of the contract, — he could not make a new one. The bank was a party to no other: The defendant assumes the burden of charging it as a party to an unlawful one, and to sustain it, seeks to show that the notes in suit, aided by inferences to be drawn from the payment of money in this State, upon the demand of Monaghan, make a contract by which the validity of those notes is to be determined.

But the finding is otherwise, and shows that what Ingram did was indeed in performance of an agreement, but it was one already made. He responded to the demand of Monaghan, that he should carry out the Michigan agreement. He did not discuss the terms with him.

The respondent says, however, that " the contract in Detroit was incomplete," as to the number of notes to be given, the actual time of 'extension, place of payment and the indorsers. It does not seem altogether so. Payment by installments at such time as would not exceed three months for any one of them was agreed upon, and that was the material term. The place of payment was immaterial, for the notes were merely collateral, and the principal debt then past due could be paid only to the creditor at its residence in Detroit, and as to the

indorsers; they were to be satisfactory to the bank. Monaghan bound the bank to nothing; he did not pass upon the sufficiency of the indorsers. His acceptance of the paper did not conclude it, and so the court further finds, that Monaghan returned to Detroit, "accounted for and delivered over" the money and notes to the bank, and they "accepted the same, and extended the time of payment according to the times the notes were made payable."

We have, then, an agreement made in Michigan, performed according to the understanding of one party in Buffalo, and acceptance of that performance by the other in Michigan as a fulfillment of the agreement. If before that event the agreement of August was revocable by either party, this acceptance of the money and securities consummated the contract. After that it cannot be maintained that the bank could, until default made in payment of the new notes, have enforced the principal debt or its security. (*McIntyre* v. *Parks*, 3 Metc. 207; *Merchant* v. *Chapman*, 4 Allen, 362.)

The case, therefore, is brought directly within the general rule of law, which makes the validity of a contract depend upon the law of the place in which it is made, and when broken furnishes a cause of action to be enforced by judicial proceedings in any State, although the contract, if made where the remedy is sought, might by the law of the forum be invalid. I think also, that the plaintiffs have brought a case here, to which, as its counsel insists, our decision in *Wayne County Bank* v. *Low*, (81 N. Y. 566) applies. In that case, as in this, an agreement for extension or forbearance of a debt was made in a foreign State. In both, the note, or obligation in fulfillment of it, was executed here; in one it was sent to the creditor by mail; in this it was delivered to the agent of the creditor appointed to receive and convey it — in the one, therefore, to a public, in the other to a private agent; but that fact, or the mode of transmission, can make no difference. (*Milliken* v. *Pratt*, 125 Mass. 374.)

Many cases are cited by the learned counsel for the respondent in support of his argument. Some of them were con-

sidered by us in *Wayne County Bank* v. *Low* (*supra*); the others have been examined. I do not think it necessary to discuss them, for the facts, as found for us, are so unlike those upon which his contention rests, and to which many of those cases are fairly applicable, that they cannot change our conclusion. He can succeed only by assuming a contract made in Buffalo. Our opinion upon the facts found is, that none was made there. More than this, there is no ground to support the assertion, that Monaghan had authority to make one. Indeed the trial judge was not asked to pass upon that question. The respondent also claims that the notes in suit were satisfied by reason of the execution of the power of sale in the mortgage. But the facts found by the court do not permit this conclusion. The sale produced less than enough to pay other debts secured by the mortgage, and the bank was clearly entitled to the benefit of all the collaterals belonging to it, until provision was made for the whole of the principal debt; and whether the proceeds were actually applied upon other debts is not material. But the notes in question are applicable to the $7,000 note alone. More than the amount of the collateral notes was unpaid, and until full payment, the bank could retain its security. (*First National Bank of Buffalo* v. *Wood*, 71 N. Y. 405.) The plaintiff, by assignment, has the same right. No other findings upon this question were requested. Upon those made, no equity in favor of the defendant is perceived, or error on the part of the trial judge.

The order of the General Term should, therefore, be reversed, and the judgment rendered by the Special Term affirmed, with costs.

All concur.

Judgment affirmed.