## MOHR v. SANDS.

No. 2777.  Opinion Filed May 20, 1913.

(133 Pac. 238.)

On Rehearing, December 1, 1914.

(144 Pac. 381.)

1.   **ATTORNEY AND CLIENT—Assignment of Claim—Fraud— Evidence.** Plaintiff, who resided in New York, employed the defendant, an attorney who resided in Nebraska, to collect a sum due her from the estate of her deceased guardian. Her claim was allowed as a preferred claim, but defendant never informed her of that fact. Defendant admits that he never doubted that it would be paid in full. He wrote plaintiff letters containing expressions indicating that there was some doubt as to whether the claim would be paid in full. He then wrote her a letter purporting to give a complete statement of the status of the estate. The letter contained a statement of the assets and liabilities of the estate, stated that the estate would not likely pay in full, expressed the opinion that it would not pay more than 60 per cent., and advised the acceptance of $2,500 offered for her claim. Acting upon the statements of the letter, she assigned the claim for $2,500 to a business associate of defendant. The claim was for nearly $3,500. At the time she assigned it the defendant knew that $2,000 would be paid soon, and he had collected that amount before he remitted to the plaintiff, and this, with $250 more, was the money she received for her claim. It was paid in full to defendant's business associate. **Held,** that a finding that she was not fraudulently induced to assign the claim is not supported by the evidence, though the defendant had at other times written, in effect, that he thought she would get her money in full by waiting.

2.   **SAME.** The fact that she may have had information from other sources that her claim would be paid in full will not relieve defendant from the consequences of his fraud.

3.   **ATTORNEY AND CLIENT—Duty of Attorney to Client—Good Faith.** It is the duty of an attorney to act with entire good faith toward his client, and his client has a right to act upon his information and advice as against information received from another, where the client has no means of obtaining knowledge except through information from others.

4.   **SAME—Assignment of Claim—Fraud—Notice.** The fact that in her original statement of the claim she had asked that it be preferred was not notice to her that the claim would be paid in full, such as relieved defendant from the consequences of the letter fraudulently written to induce her to assign the claim for less than its value.

5.  **LIMITATION OF ACTIONS—Fraud.** The statute of limita-
tions does not bar an action for fraud until two years after
the fraud is discovered.

6.  **COURTS—Jurisdiction—Enforcement of Penalty Under Stat-
ute of Foreign State.** A statute of Nebraska providing that
an attorney guilty of fraud and deceit shall forfeit treble
damages imposes a penalty which is not enforceable in the
courts of this state·

7.  **PLEADING—Variance—Treble Damages.** Where a petition
alleges all the facts showing fraud and the amount of actual
damages, but prays for treble damages, which are not recov-
erable, the court may disregard the prayer, and render judg-
ment for actual damages.

8.  **LIMITATION OF ACTIONS—Fraud—Notice.** The plaintiff
residing in New York is not charged with notice of a fraud
practiced upon her by her attorney in Nebraska so as to start
the statute of limitations because the records of the court in
Nebraska would show the fraud, where the attorney was act-
ing for her in the matter concerning which the record was
made, and was charged with the duty of informing her as to
the state of the record, and she had no means of ascertaining
what the record showed, except by correspondence with her
attorney.

(Syllabus by Rosser, C.)

*Error from District Court, Osage County;*

*John J. Shea, Judge.*

Action by Lizzie P. Hohr, *nee* Pett, against Archibald Sands.
Judgment for defendant, and plaintiff brings error. Reversed and
rendered.

*Preston A. Shinn* and *W. G. Hastings,* for plaintiff in error.

*Boone, Leahy & MacDonald,* for defendant in error.

Opinion by ROSSER, C. James N. Bullion was the guar-
dian of Lizzie Pett, and as such held $3,490 belonging to her,
and died without paying it to her. Bullion resided in Nebraska
at the time of his death, and Miss Pett resided in New York.
The defendant, Archibald S. Sands, was an attorney at law prac-
ticing in the county where her guardian died. She employed
him to represent her in collecting the amount due her from her
guardian's estate. The contract between her and Sands was
made by mail, and all the business was transacted by mail. On

the 29th of August, 1901, her claim against the Bullion estate was allowed as a preferred claim. The estate had ample assets to pay the claim, and Sands admits he never doubted it would be paid in full. On the 17th of September, 1901, Sands wrote Miss Pett the following letter:

"Sept. 17, 1901.

"Miss Lizzie Pett, Cullen, N. Y.

"DEAR MADAM:

"On the computation made by me on the claim in your favor against the estate of Bullion, deceased, which I sent you for signature, I did not credit the estate with a remittance of Jan. 1st, 1901, of $108.55. The estate filed objections to the allowance of your claim, and claimed the credit for this sum, and produced the draft from the State Bank of De Witt, which bears the indorsement of Mrs. Rachel Pett, as well as your own. I therefore conceded the credit requested, and have secured the allowance of your claim in full, as filed by us, with this exception. On the hearing of the contest thereof, I will secure settlement of as much of this claim as possible as soon as I can, and urge the sale of the real estate with which to pay the balance. Should the widow claim her homestead and allowance, which she had not yet done, I fear the estate will not pay the claims in full. They have made a proposition of $2,500.00 in satisfaction of your claim, and in as much as the administratrix has eighteen months in which to settle claims, during which time expenses of administration, cost of sale and accruing interest on the claims will naturally depreciate their value, I do not know but what it might be advisable to accept; depending also somewhat on your desire and immediate use for the money. I leave this entirely with you and await your advice.

"Very truly yours,

"A. S. SANDS."

On the 30th of September he wrote the following letter, which, however, Miss Pett denies having received:

"WILBER, NEBR., Sept. 30th, 1901.

"Lizzie Pett, Cullen, N. Y.

"DEAR MADAM:

"The administratrix now advises me that she will not pay at this time the full amount she offered for your claim, but would pay a part now, and the balance at the close of the es-

. tate or perhaps before that time. I· have talked with the County Judge and he will require her to pay $2,000.00 soon, and the balance at the close of the estate, or when the costs and expenses can be satisfactorily estimated. If this is sufficient for your present requirements I would not dispose of the claim.

"Awaiting your advice, I am,

"Very truly yours,

"A. S. Sands."

On the 7th of October he wrote to her the following, which she also denies having received:

"Wilber, Nebr., Oct. 7, 1901.

*"Miss Lizzie Pett, Mohawk, N. Y.*

"My· Dear Madam:

"I have seen Mr.· Lane, who is interested with me in business matters, and he will take your claim at $2,500, paying me for· my further services therein and should you dispose of it I will accept 10% in settlement of fees, however, if you can wait for the balance from the administratrix you' would realize more in the end. The inquiries which you make are covered in my previous letter of today, which, of course, do not effect your claim, except by the way· of delay. ·

"Awaiting your further advice, I remain,

"Very truly yours,

"A. S. Sands."

On the same day he wrote her this letter, which she received, and which she claims is the only one of that date she did receive:

"Wilber, Nebr., Oct. 7th, 1901.

*"Miss Lizzie Pett, Mohawk, N.·Y.*

"My Dear Madam:

"I have your letter of the 2nd inst. and note contents thereof with care. In answer to your letter ·I would say, that it is impossible to recover anything at all out of the bondsman, Mr. Dawes, as he is financially worthless, and nothing can be inforced against him. The claims allowed against the estate amount to between $7,200.00 and $7,500.00, with about $3,000.00 yet in litigation, which are valid claims, but were ·not filed in time, and with the limitation fixed by the court for the filing of claims, hence became barred; but the attorney who appears for these claimants has filed three petitions thereby instituting three suits, asking to be permitted to file claims, and for the allowance

thereof. These suits which were instituted about the 24th of September, and since I last wrote you, are being contested by the administratrix, and her attorney. Should these be allowed ultimately the aggregate of the claims would be about $10,000.00, or a little more, and pending this litigation will bear interest at 7% to 10%, according to the particular rates contracted for on the various claims. The assets consist of $2,579.00 cash on hand, 80 acres of deeded land, which is homestead, and sale contracts for 240 acres of school land, partially paid out, which is worth about $5,000.00, partially paid out. The widow is entitled to an allowance of $200.00 and the homestead, and pending the settlement of the estate, the further sum of $50.00 per month. The cost of the administration, together with the widow's rights, must first be settled, then the remaining assets applied *pro rata* to the liquidation of claims. You can see from this that the estate will not likely pay in full any of the claims, and with the litigation recently instituted in the probate court, of which I have made mention, and which in all probability will pass through several courts before final determination, I would deem it advisable to accept the proposition that we have of $2,500.00, providing I can now secure it, as these suits will involve, no doubt, considerable expense, and delay the settlement of the estate for a year or two, thus a matter of necessity very much reduces the assets and incurs liability of this estate. $2,500.00 is the only offer I have had by way of settlement of your claim, and I do not believe that we could again procure a settlement more favorable, as at the time this was made, the suits mentioned, had not been instituted, and were entirely unknown. My present opinion is that the estate will not pay to exceed 60%, unless litigation is suddenly brought to a close, which there is no present indications, and my experience has taught me that this class of proceedings are usually, if not always, protracted. I have given you as complete a statement of the present status of this estate as I can and I hope the information may be sufficient to cause you to arrive at a conclusion that will prove to be the most profitable to your interests.

"Awaiting your further instructions in this matter, I am,

"Very truly yours,

"A. S. SANDS."

Following this letter Sands sent her an assignment of the claim to one Lane for $2,500, and she assigned the claim to Lane. At the time Sands received from her the assignment of

the claim he knew the $2,000 would be paid soon and before he remitted had already collected from the administrator $2,000 of the money due her, and this $2,000 was used to pay that much of the $2,500 that was to be paid for the assignment of the claim. Sands retained $250. So that, aside from her own money already in the hands of her attorney, plaintiff only received $250. Sands represented Lane in the matter of collecting the balance due from the estate, and the entire amount, with interest, was collected. Lane and Sands were intimately associated together in business matters, and according to Sands' statement he received a considerable portion of the balance upon fees that were due him from Lane in connection with the collection of the balance due from the Bullion estate, and also from other matters. Miss Pett did not learn the facts with reference to her claim being allowed, and as to the certainty of its payment until July or August, 1907. This suit was brought on the 7th of June, 1909, to recover difference between the $2,250 which she actually received for the assignment of the claim, and the amount which was paid by the estate, amounting to $1,349.42, with interest amounting to $706.31, or a total of $2,055.73, and also to recover treble damages for the deceit which she alleges was practiced upon her, which would make the entire claim something over $6,000. The plaintiff's brief contains 29 assignments of error.

The first assignment that will be considered is that the court erred in finding that there was no fraudulent suppression of truth by the defendant to induce plaintiff to assign her claim, and no fraudulent misrepresentation of its condition. This finding is not supported by the evidence. This is not a case where parties were dealing at arm's length. Sands was the plaintiff's attorney. She had the right to expect that he would tell her the truth and all the truth, and she had the right to believe his statements, regardless of what she may have heard from other sources.

"The contract which the law implies from an attorney's employment is that he shall render faithful and honest service to his client in the conduct of the business in which he is employed, and that he shall not use the knowledge gained therein, or

the position which he occupies by virtue of his relation, to the prejudice of his client, and that he will serve in good faith and to the best of his knowledge and ability." (*Chatfield v. Simonson*, 92 N. Y. 209. See, also, *Hoopes v. Burnett*, 26 Miss. 428; *Foy v. Cooper*, The Jurist 1842, p. 128.)

An examination of the correspondence set out above shows that the defendant did not disclose the truth to his client. In his letter written September 17, 1901, he says:

"Should the widow claim her homestead and allowance, which she has not yet done, I fear the estate will not pay the claims in full. They have made a proposition of $2,500.00 in satisfaction of your claim," etc.

He then proceeds in an adroit way to suggest a compromise. This letter was intended to arouse her fears and to dispose her to get the matter settled. He claims to have written then the letter of September 30, 1901. That letter, if written, informed the plaintiff that the judge would require the administratrix to pay $2,000 and the balance later. She denies having received this letter. Then on the 7th of October he wrote her the letter set out in full above. It appears from that letter that she had written him on the 2d of October, recognizing the doubtfulness of collecting the claim in full from the estate, and inquiring whether the bondsmen could not be required to make up the deficiency. He tells her that nothing can be made from them. He then recites the number of claims that had been filed and the number of suits pending, and details the assets of the estate, and tells what the widow is entitled to. He then says:

"You can see from this that the estate will not likely pay in full any of the claims, and with the litigation recently instituted in the probate court, of which I made mention, and which in all probability will pass through the several courts before final determination, I would deem it advisable to accept the proposition that we have of $2,500.00, providing I can now secure it, as these suits will involve, no doubt, considerable expense, and delay the settlement of the estate for a year or two, thus a matter of necessity very much reduces the assets and incurs (increases) liability of this estate. $2,500.00 is the only offer I have had by way of settlement of your claim, and I do not believe that we could again procure a settlement more favorable as at the

time this was made, the suits mentioned had not been instituted and were entirely unknown. My present opinion is that the estate will not finally pay to exceed 60% unless litigation is suddenly brought to a close, which there is no present indications, and my experience has taught me that this class of proceedings are usually, if not always, protracted."

It told her that there was a likelihood that she would never collect all of her claim, probably not over 60 per cent. In another part of the letter he recommends that she accept $2,500. This was a fraud. He admits that he knew at that time that her claim would be paid in full. The other letters which he claims to have written, of September 30th and of October 7th, do not cure the misleading effect of this letter. He does not tell her in either letter that her claim has been allowed as a preference, and would in all probability be paid in full. In the letter of September 30th he begins by telling her that the administratrix will not pay the amount she had previously offered. He does tell her that he had seen the county judge, and that he will require the administratrix to pay $2,000, and the balance at the close of the case, or when the costs and expenses could be estimated. He leaves the impression there that costs and expenses might interfere with her claim. In the other letter of October 7th, he tells her that, if she will wait for the balance from the administratrix, she will receive more than $2,500 in the end. But was a statement of that sort without the assurance that her claim would be paid in full calculated to dissipate the fears or allay the uneasiness caused by the long letter of the same day, evidently written for the purpose of frightening her into assigning the claim to defendant's business associate? When to these letters are added the fact that at the time defendant remitted to her the money due under the assignment of the claim from plaintiff he had $2,000 in his hands belonging to her, that he knew when negotiating the assignment that the $2,000 would be paid soon, and that all but $250 that she received was her own money in the hands of her attorney at the time the remittance was made by him, it is impossible to escape the conclusion that his conduct in the matter was fraudulent.

It is claimed that plaintiff must have learned from two letters written by Mrs. Bullion, the administratrix, that her claim was preferred. The first of these letters tells her that her attorney may be right in telling her the claim was paid before the others; that it is for the court to decide the question. In the second the administratrix informs her that she had told Mr. Sands she would compromise for $2,500, but adds:

"Changes have now occurred, and I would not care to do this even if it is a preferred one. I am aware that preferred claims must be paid in full before any general claims just as well as you are, but this is no reason for paying every dollar on hand on your claim at this time, but I can pay probably $2,000.00 on your claim and the balance when the estate is settled. I suppose the reason that no other surety was supplied by Mr. Bullion was because he had property enough to pay you and did not consider you were running any risk, which, of course, you are not, although you will be obliged to wait for a part of your money."

There is a strong implication in this letter that the claim was preferred, but not a direct statement to that effect, and certainly nothing that the plaintiff would be required to believe as against the statement of her lawyer, whose advice and assistance she was to pay for and in whom she had confidence.

It is also urged that she must have known the claim was a preferred one, because in her affidavit to the account which she filed with the administratrix she asked that it be allowed as a preferred claim. She denies that this request was in the affidavit when she signed it, and much testimony pro and con upon this point is in the record, but this is not a controlling question in the case. The fact that she asked that it be allowed as a preferred claim is not notice to her that it was so allowed. The fact remains that her attorney never told her it was allowed as a preferred claim, and in the letter in which he tells her he has given as complete statement as he can he does not say it was preferred, but, on the other hand, expresses doubt as to whether it will ever be paid and recommends a settlement. He cannot be heard to say that she should not have believed him. She had no other way to get information than by mail, and she would

have been justified in accepting his statement as against that of the other parties, even though they had been much more specific in their statements than they were. Besides, she was not a lawyer, and would not have known, except in a general way, what effect as to payment a preference would have on her claim. Even though he had written that it was preferred, the letter of October 7th was of a nature to lead her to believe there was no certainty that she would be paid in full.

The next question presented is whether or not the plaintiff's cause of action is barred by the statutes of limitations. The Nebraska statute provides that an attorney who is guilty of any deceitful collusion shall forfeit treble damages to the injured party, and the plaintiff demands treble damages in this case. If this action is one to recover a penalty, it is barred by the fourth subdivision of section 5550, Comp. Laws 1909 (section 4657, Rev. Laws 1910), which provides that an action on a statute for penalty or forfeiture shall be brought within one year. The plaintiff knew of the fraud that had been practiced upon her more than one year before this suit was brought. But she could not maintain the action for treble damages in the courts of this state, even though she had brought it within the year. It is well settled that the courts of one state will not enforce a penalty prescribed by the laws of another. *The Antelope,* 10 Wheat. (U. S.) 66-123, 6 L. Ed. 268; *Wisconsin v. Pelican Ins. Co.,* 127 U. S. 265, 8 Sup. Ct. 1370, 32 L. Ed. 239; *Jones v. Fidelity Loan & Trust Co.,* 7 S. D. 122, 63 N. W. 553. Penal laws have no extraterritorial force. *Western Trans., etc., Co. v. Kilde. house,* 87 N. Y. 430; *Scoville v. Canfield,* 14 Johns. (N. Y.) 338, 7 Am. Dec. 467. The only cause of action she had here was for actual damages, and that was not barred until two years after she learned of the fraud. Comp. Laws 1909, sec. 5550, subsec. 3. Two years from the time she discovered the fraud had not elapsed at the time suit was brought. Therefore the action for actual damages was not barred.

The allegations of the petition are sufficient to sustain a judgment for actual damages. The fact that it also prayed for

the penalty does not prevent the court from rendering judgment for actual damages only. *Jones v. Fidelity Loan & Trust Co.,* 7 S. D. 122, 63 N. W. 553.

"A plaintiff is entitled to relief to the extent that the averments of his petition are sustained by the proof." (*Toy v. McHugh,* 62 Neb. 820.)

In *Minneapolis, etc., R. Co. v. Brown,* 99 Minn. 384, 109 N. W. 817, the court said:

"If the complaint states a cause of action which entitles the plaintiff to some relief, it is not subject to demurrer because all the relief demanded may not be obtainable."

In *Walker v. Fleming,* 37 Kan. 171, 14 Pac. 470, the court said:

"The facts themselves determine what cause of action the petition states, and not what the pleader may call the cause of action founded upon those facts."

In *Smith v. Kimball,* 36 Kan. 474, 13 Pac. 801, the court said:

"However strongly a pleader may be bound, and however much he may be estopped by the averments of facts in the body of his pleadings, it is doubtful whether he is bound or estopped by his prayer for relief. He is supposed to know the facts upon which he predicates his action, and to state them as he understands them, but the relief to which he is entitled on the facts related is a question for the court, and over which he has no control."

In *Mark v. Murphy,* 76 Ind. 534, the court said:

"The fact that the appellant demanded more relief than he was entitled to ought not to defeat his right to recover any relief. The facts stated in his cross-complaint were sufficient to show that the mortgage in suit was a cloud upon the appellant's title to two-thirds of the premises, and that far forth they showed that he was entitled to the relief prayed for."

See, also, *Smith v. Smith,* 67 Kan. 841, 73 Pac. 56; *Kleinschmidt v. Steele,* 15 Mont. 181, 38 Pac. 827; *State v. Tooker,* 18 Mont. 540, 46 Pac. 530, 34 L. R. A. 315; *McGillivray v. McGillivray,* 9 S. D. 187, 68 N. W. 316; *McClure v. La Plata Coun-*

*ty,* 23 Colo. 130, 46 Pac. 677; *Rutenic v. Hamaker,* 40 Or. 444, 67 Pac. 196.

It would not be just to prevent the plaintiff in this case from recovering her actual damages for the fraud committed because she asked for the penalty, and the penalty is barred by the statutes of limitations.

The defendant contends that plaintiff is charged with notice of the fraud because the records of the court showed that her claim had been allowed as a preferred claim and paid in full more than three years before the action was brought, and that she is charged with the knowledge of what appeared upon the record. Ordinarily this would be true, but this rule does not apply in this case. The plaintiff resided in New York and she had no access to the record, and her only means of getting notice of what the record contained was through information which it was the duty of the defendant to give her. The fact that he failed to give her the information which the record shows is an element of fraud in this case. She had a right to look to him for the information, and he cannot be heard to say that she is charged with knowledge of the record when he, in violation of his duty, failed to give her the information, but, on the other hand, misled her as to the condition of the estate.

The judgment should be reversed and here rendered in favor of the plaintiff for the sum of $1,349.42, with interest at the rate of 7 per cent. per annum from the 16th day of November, 1901.

## ON REHEARING.

Opinion by BREWER, C. The original opinion in this case reversed the holding of the lower court and entered judgment here in favor of the plaintiff in error. Later a petition for rehearing was filed and thereafter overruled. After that the present petition to vacate the former order overruling the petition for rehearing and to grant a rehearing was filed. To support this petition voluminous briefs have been filed by the respective sides, containing exhaustive arguments, together with a close and analytical discussion of every possible phase of the case

in the remotest way involved. These most excellent arguments have impelled us again to go over the entire record, and we have done so and studied the case in the light of the new arguments presented; but, after weighing them all, we are still convinced that the former holding was a just one, and in fact the only one that would work justice under the facts. We are further convinced that the condition of the record justified the rendering of the case here as was done.

We are, therefore, of the opinion that the petition to vacate the former order, and to grant a rehearing, should be denied, and the former opinion of this court in all things adhered to.

By the Court: It is so ordered.