## FARMER v. STANDEVEN.
### No. 1549.

Circuit Court of Appeals, Tenth Circuit.
Dec. 30, 1937.

Rehearing Denied Jan. 31, 1938.

G. C. Spillers, of Tulsa, Okl. (T. Austin Gavin, of Tulsa, Okl., on the brief), for appellant.

J. A. Duff, of Tulsa, Okl. (Guy S. Manatt and Norton Standeven, both of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS and WILLIAMS, Circuit Judges, and SYMES, District Judge.

PHILLIPS, Circuit Judge.

H. L. Standeven, from November 18, 1930, to December 31, 1931, was president of the Exchange National Company and a member of its board of directors.

In November and December, 1930, the books of the company reflected certain stock transactions between the company and Standeven as set out in subjoined note.[1]

It will be observed that on December 31, 1930, Standeven resold to the company the stocks he had purchased from it between

| [1] Date | Explanation | Debit | Credit | Balance |
|---|---|---|---|---|
| Nov 18 30 | 100 sh. Fourth Nat'l Inv. Corp. Common Stock at 23½ | | 2,332.50 | |
| Nov 18 30 | 100 sh. Fourth Nat'l Investors Corp. Common Stock at 23½ | | 2,332.50 | |
| Nov 18 30 | 100 sh. Fourth Nat'l Investors Corp. Common Stock at 24 | | 2,382.50 | |
| Nov 18 30 | 100 sh. Second Nat'l Investors Corp. Pfd. Stock at 49½ | 4,965.00 | | |
| Nov 18 30 | 100 sh. Second Nat'l Investors Corp. Pfd. Stock at 50 | 5,017.50 | | 5,347.50 |
| Nov 20 30 | 100 sh. Fourth Nat'l Inv. Corp. Common Stock at 23½ | | 2,332.50 | |
| Nov 20 30 | 100 sh. Fourth Nat'l Inv. Corp. Common Stock at 24 | | 2,382.50 | |
| Nov 20 30 | 100 sh. Fourth Nat'l Inv. Corp. Common Stock at 23½ | | 2,332.50 | |
| Nov 20 30 | 100 sh. Fourth Nat'l Inv. Corp. Common Stock at 24½ | | 2,432.50 | |
| Nov 20 30 | 100 sh. Second Nat'l Inv. Corp. Preferred Stock at 51 | 5,117.50 | | 985.00 |
| Nov 21 30 | 100 sh. Third Nat'l Inv. Corp. Common Stock at 23 | | 2,283.50 | |
| Nov 21 30 | 100 sh. Third Nat'l Inv. Corp. Common Stock at 22½ | | 2,233.50 | |
| Nov 21 30 | 100 sh. Second Nat'l Inv. Corp. Pfd. Stock at 51½ | 5,167.50 | | |
| Nov 21 30 | 100 sh. Second Nat'l Inv. Corp. Pfd. Stock at 51 | 5,117.50 | | 6,753.00 |
| Nov 28 30 | 100 sh. Fourth Nat'l Inv. Corp. Common Stock at 24⅛ | | 2,395.00 | 4,358.00 |
| Dec 9 30 | 100 sh. Third Nat'l Investors Corp. Common Stock at 20 | | 1,983.50 | 2,374.50 |
| Dec 31 30 | 100 sh. Sec. Nat. Inv. Corp. Pfd. Stock at 49½ | | 4,965.00 | |
| Dec 31 30 | 100 sh. Sec. Nat. Inv. Corp. Pfd. Stock at 50 | | 5,017.50 | |
| Dec 31 30 | 100 sh. Sec. Nat. Inv. Corp. Pfd. Stock at 51 | | 5,117.50 | |
| Dec 31 30 | 100 sh. Sec. Nat. Inv. Corp. Pfd. Stock at 51½ | | 5,167.50 | |
| Dec 31 30 | 100 sh. Sec. Nat. Inv. Corp. Pfd. Stock at 51 | | 5,117.50 | |
| Dec 31 30 | 100 sh. Third Nat. Inv. Corp. at 20 | 1,983.50 | | |
| Dec 31 30 | 100 sh. Fourth Nat. Inv. Corp. at 23½ | 2,332.50 | | |
| Dec 31 30 | 100 sh. Fourth Nat. Inv. Corp. at 24½ | 2,432.50 | | |
| Dec 31 30 | 100 sh. Third Nat. Inv. Corp. at 23 | 2,283.50 | | |
| Dec 31 30 | 100 sh. Third Nat. Inv. Corp. at 22½ | 2,233.50 | | |
| Dec 31 30 | 100 sh. Fourth Nat. Inv. Corp. at 24⅛ | 2,395.00 | | |
| Dec 31 30 | 100 sh. Fourth Nat. Inv. Corp. at 23½ | 2,332.50 | | |
| Dec 31 30 | 100 sh. Fourth Nat. Inv. Corp. at 23½ | 2,332.50 | | |
| Dec 31 30 | 100 sh. Fourth Nat. Inv. Corp. at 24 | 2,382.50 | | |
| Dec 31 30 | 100 sh. Fourth Nat. Inv. Corp. at 23½ | 2,332.50 | | |
| Dec 31 30 | 100 sh. Fourth Nat. Inv. Corp. at 24 | 2,382.50 | | 2,412.50 |

November 18, 1930, and November 21, 1930, at the same prices he had paid for them, and on December 31, 1930, he repurchased from the company the stocks he had sold to it between November 18, 1930, and December 9, 1930, at the same prices he had received for them. In other words, there were complete rescissions on December 31st of the previous sales and purchases.

On October 12, 1933, Rex Watkinson was appointed receiver of the company. An accountant, who had examined the books of the company, in his report made on April 18, 1935, stated that the books reflected sales on December 31, 1930, by Standeven to the company of 500 shares of Second National Investors Preferred for $25,385.00, for which Standeven received credit on the books, and that the price of such shares on the New York Stock Exchange on that day was $39.00 per share.

Watkinson commenced this action against Standeven to recover the sum of $5,885.00, the excess of the selling price of the stock over its market value.

In the second amended petition he alleged the purchase by Standeven from the company between November 18, and November 21, 1930, of 500 shares of Second National Investors Preferred for $25,385.00 and the sale by Standeven to the company on December 31, 1930, of an equal number of such shares for $25,385.00; that the market value of such stock on December 31, 1930, was $39.00 per share; that the company sustained a loss on such purchase of $5,885.00; that the loss was sustained by reason of the fraud and dishonesty of Standeven as an employee, officer and director of the company. The fraud was alleged in general terms only, no specific facts being set up.

The receiver further alleged:

"Plaintiff further alleges that at the time of said fraudulent act the defendant H. L. Standeven was an officer, director and employee of the Exchange National Company, but that the Exchange National Company had no notice of the conversion of its funds in the manner heretofore set out until on or about the 20th day of December, 1933, when the plaintiff had the same called to his attention by an auditor appointed by this court."

Standeven pleaded the statute of limitations and other defenses not here material.

Farmer succeeded Watkinson as receiver and on January 18, 1937, was substituted as party plaintiff.

At the trial the auditor testified as to the book entries set out in note 1 and that the value of the Second National Investors Corporation shares on the New York Stock Exchange on December 31, 1930, as shown by the New York Times, was $39 per share.

Watkinson and Farmer testified that they knew nothing about the discrepancy in Standeven's account until early in the year 1934.

Standeven demurred to the evidence. The trial court directed a verdict in favor of Standeven on the grounds that the receiver had not proven sufficient facts to constitute a cause of action and that the alleged cause of action was barred by the statute of limitations.

Section 101, O.S.1931, 12 Okl.St.Ann. § 95, reads in part as follows:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: * * * Third. Within two years: * * * an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

Both parties agree that this statute is applicable in the instant case.

Standeven, as an officer and director of the company, was not a trustee of an express trust arising from contract or privity, but rather the trustee of an implied or resulting trust created by operation of law from his official relation to the company.[2] It follows that the statute of limitations could be invoked by Standeven as a bar to the action.[3] There were at least two other directors of the company during the time of the transactions with Standeven here involved. There was neither allegation nor proof of any conspiracy between Standeven and the other directors. There was neither pleading nor proof of active concealment on the part of Standeven. On the contrary, the entire

---

[2] Cooper v. Hill, 8 Cir., 94 F. 582, 590; Hughes v. Reed, 10 Cir., 46 F.2d 435, 441.

[3] Cooper v. Hill, supra, 94 F. 582, at page 590; Curtis, Receiver, v. Connly, 257 U.S. 260, 42 S.Ct. 100, 66 L.Ed. 222; Payne v. Ostrus, 8 Cir., 50 F.2d 1039, 1043, 77 A.L.R. 531.

transaction was fairly and fully reflected on the books of the company. The other officers and directors were chargeable with notice of what the books of the company reflected and what reasonably prudent inquiry would have disclosed.[4] The transactions were unusual and the books and records of the company reflected sufficient to put the other officers and directors on inquiry.[5] They could have readily ascertained the market value of the stock on December 31, 1930.

The case of Spalding v. Enid Cemetery Association, 76 Okl. 180, 184 P. 579, 582, relied on by counsel for the receiver is clearly distinguishable. In the opinion in that case the court said:

"There is some contention that this item was barred by the three-year statute of limitations, but the findings of the referee show that it was not only fraudulently contracted, but that it was fraudulently concealed from the corporation. It is true that the minutes show that the sum of $400 was paid for a gate for the cemetery; but there was nothing in the minutes tending to indicate what the true value of the gate was, or the great disparity between its true value and the amount allowed, and the corporation does not seem to have been apprised of the fraud that was perpetrated upon it in this matter until about the time of the commencement of this action. These circumstances were sufficient to toll the statute of limitations."

■ Here the kind and character of the stock was fully reflected on the books of the company and no extrinsic inquiry was necessary except with respect to its market value which was readily ascertainable from stock quotations. On the other hand, in the Cemetery Case the description of the gate in the books gave no information with respect to the kind of gate or its true value. It was necessary to ascertain the kind of gate involved and its value from extrinsic inquiry. Here the resale and repurchase by the parties respectively of listed stocks they had sold and purchased a short time before at identical prices, at a time when the market was fluctuating greatly, was sufficient to put the other officers and directors of the company on inquiry, while in the Cemetery Case there was nothing in the records indicating other than an ordinary transaction.

We conclude that the action was barred by the statute of limitations.

The judgment is therefore affirmed.

SYMES, District Judge (dissenting).

I regret I am unable to agree with the views of the court. The opinion sets out the many stock transactions between the Exchange National Company and the defendant Standeven in November, and December, 1930. The complaint, however, is grounded solely upon the purchases by Standeven of preferred stock of the Second National Investors Corporation from the company on various dates in November, 1929, and November, 1930, aggregating 500 shares, for $25,385, and his sale of the said 500 shares back to the company on December 31, 1930, at the same price. Standeven did not pay for the stock and the debit was thus balanced on the books.

In the meantime the market price of stock on the New York market had declined from around $51 to $39 a share on December 30, 1930. So it is as clear as arithmetic can be that Standeven profited,

---

4 Cooper v. Hill, supra, 94 F. 582, at page 585; Curtis, Receiver, v. Connly, supra, 257 U.S. 260, at page 264, 42 S. Ct. 100, 101, 66 L.Ed. 222; Hughes v. Reed, supra, 46 F.2d 435, at page 441; Payne v. Ostrus, supra, 50 F.2d 1039, at page 1043, 77 A.L.R. 531; McNair v. Burt, 5 Cir., 68 F.2d 814, 815, 816.

5 See Curtis, Receiver, v. Connly, supra, 257 U.S. 260, at page 264, 42 S.Ct. 100, 101, 66 L.Ed. 222; Wood v. Carpenter, 101 U.S. 135, 139, 140, 25 L.Ed. 807.

In Curtis v. Connly, supra, the court said:

"Notice to an officer, in the line of his duty, was notice to the bank. A single director like a single stockholder could proceed in the courts. Joint Stock Discount Co. v. Brown, L. R. 8 Eq. 381, 403.

"The counsel for the plaintiff seemed to take the bill as admitting less than we have said in the way of knowledge. We are unable to read it otherwise than as we have indicated, but even if knowledge on the part of the new directors were not expressly charged, it was their business and duty in the year and seven months from the resignation of the first three to August 3, 1910, or the seven months after the resignation of the second three to the same date, to get some notion of the credits and assets of the bank. It does not appear that there would have been any difficulty in ascertaining at least enough to lead to further inquiry if they had."

and the company was mulcted to the extent of the difference, $5,885.

The defendant's motion for a directed verdict made and granted at the end of plaintiff's case admits the above facts, to which we confine our discussion, setting aside all matters of defense set up in the answer and discussed in the briefs.

1. Standeven, president and director of the company, was liable for any profit he made at its expense. 14A C.J. p. 122. Any action on the part of an officer of a corporation that tends to sacrifice its interest is a flagrant breach of trust for which he is responsible; nor may he directly or indirectly derive any personal profit, benefit, or advantage by reason of his position, but will be required to strictly account for the same. 14A C.J. pp. 99, 122 et seq.

It is idle to say that because the stock was bought and sold back to the company at the same price, no loss was sustained. But even so a recovery may be had if the defendant made money by such a transaction, irrespective of whether the company sustained a loss or not. He has the burden of defending the transaction. 14A C.J. pp. 112, 123.

So a cause of action arose.

2. Section 101, O.S.1931, 12 Okl.St. Ann. § 95, statute of limitations, reads in part as follows: "Third. Within two years: * * * an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

The defendant's interest was hostile to that of the company and it was to his interest to conceal the facts. So his knowledge was not the knowledge of the corporation. Maryland Casualty Co. v. Tulsa Industrial Loan & Investment Company, 10 Cir., 83 F.2d 14, 15, 105 A.L.R. 529. The rule in Oaklahoma is: "Where the agent is committing a fraud it would be contrary to common sense to presume that he would communicate the facts to his principal." Ætna Casualty & Surety Co. v. Local Building & Loan Association, 162 Okl. 141, 19 P.2d 612, 616, 86 A.L.R. 526.

"And in the case of a corporation which must act through agents, a different rule is applied; the fraud of the agent will prevent the operation of the statute in favor of the principal until a discovery of the fraud." 37 C.J. 980, § 364.

Furthermore the action is by the receiver of a defunct corporation in behalf of its stockholders and creditors and against an officer who betrayed his trust. No rights of third parties are involved.

The record does not disclose what other officers there were; but assuming, as the lower court did, that there were other directors, the court erred in charging them with constructive notice—at least until the defendant had been put to his proof of his affirmative defense. The case never got that far. So at the time the motion was granted there was nothing to bring the situation within the well-known rule that "The corporation is affected with constructive knowledge, regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority." 14A C.J. p. 482, § 2350.

Section 2351 following makes it clear that this rule applies to officers and agents only, as distinguished from directors, whose liability is discussed in the next section, 2352, and limits such knowledge on the part of directors to that which is communicated or possessed by them when assembled as a board, and that they have power to bind the corporation only when acting officially as a member; that therefore knowledge acquired by a director individually and not while acting as a member of the board is not notice to the corporation. If the rule was otherwise the corporation would incur the same liability for unofficial acts of directors that partners do for the acts of partners and its business would be subjected to extraordinary confusion and hazards. As a practical matter directors are seldom conversant with the details of every transaction the books disclose. Logically carried out the holding of the lower court would eliminate the distinction between corporations and partnerships.

What is there is this record to disclose actual knowledge on the part of other directors, or of facts sufficient to excite their suspicion and require inquiry? The witness Ephriam testified the records of the company revealed the total purchase price of the stock and what the defendant sold it back to the company for, but not the market price per share; that it was not common to put the current stock quotations on the ledger records. Assuming they knew

all the books showed, was the corporation chargeable with knowledge which its directors, living in Oklahoma, could obtain only by consulting the financial sheets in New York publications. I think not.

In an old case, Vernon v. Manhattan Co., 17 Wend., N.Y., 524, cited with approval in 14A C.J. p. 488, note 28, it was held there was no presumption of law that a notice contained in a newspaper subscribed to by a corporation for the use of its officers had come to the eyes of such officers.

Curtis, Receiver, v. Connly, 257 U.S. 260, 42 S.Ct. 100, 101, 66 L.Ed. 222, is not authority here. That was an action against former directors of a bank for losses sustained because of dividends paid out of capital and improper loans made by the defendant directors. On the law Mr. Justice Holmes said no more than that the bank must be charged with knowledge of what appeared upon its books, and on the facts that "It is alleged unmistakably in the bill that all the directors were chargeable with notice and did in fact know that the dividends were paid out of assets and not earned and that the improper loans should be recalled."

No question of constructive notice was involved.

Likewise in Cooper v. Hill, 8 Cir., 94 F. 582, in which the officers and directors expended bank money in operating a mine, it is stated that the books of the bank disclosed the transactions. Cases in point on the facts are Reid v. Robinson, 64 Cal.App. 46, 220 P. 676, 677; Mohr v. Sands, 44 Okl. 330, 133 P. 238, 144 P. 381; Carson v. Harrod, 91 Okl. 62, 215 P. 929; Highland Park Investment Co. v. List, 42 Cal. App. 752, 184 P. 48; Maryland Casualty Co. v. Tulsa Industrial Loan & Investment Co., supra. In Spalding v. Enid Cemetery Ass'n, 76 Okl. 180, 184 P. 579, 582, the minutes of the corporation showed that $400 was paid for a cemetery gate, but nothing to indicate the disparity between its true value and the amount allowed. This was held sufficient to toll the statute of limitations. Likewise in the case at bar the amount paid for the stock was disclosed by the books, but it was necessary for the receiver to hire an expert auditor and search beyond the company records in order to discover the fraud.

In conclusion: It would seem this is not a case for the application of the statute of limitations, at least not until the defendant has established a state of facts to which it can be applied.